15459

STATE v. ROBINSON

(22 S. E. (2d), 587)

*Messrs. Whiteside & Taylor* and *Mrs. Ben Hill Brown, Jr.,* all of Spartanburg, Counsel for Appellant,

*Mr. Samuel R. Watt,* Solicitor, of Spartanburg, appeared for the State, Respondent.

November 2, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM:

The defendant, John K. Robinson, was charged with the murder of Kenneth J. Wofford, in the Pacolet Station section of Spartanburg County, on the night of January 4, 1942. Upon the trial before the Honorable M. M. Mann, presiding Judge, and a jury, at the April term, 1942, of the Court of General Sessions for that county, the State, by the testimony of a local physician, a Captain in the United States Army, the sheriff and two members of the rural police force of Spartanburg County, an employee of a nearby mill, and the widow of the decedent, all of whom were competent witnesses as to vital aspects of the case, established that at the time and place named, the defendant engaged Wofford, toward whom no ill will or reason therefor appeared to exist, to drive him in a taxicab to Pacolet. While the two men were riding, the defendant instructed Wofford to stop the

automobile and to get out. Wofford complied with the instructions, and crossed the highway away from the taxicab, at about which time Wofford asked Robinson not to treat him in that way. At about the same time, the defendant twice shot Wofford with a stolen "service revolver" which was duly identified upon the trial. Each of the shots was fired from behind the decedent, one of the bullets entering his back and going forward through the right chest, in the region of the lung, and the other having entered the occipital region in the back of the head. The first shot was fired for the purpose of robbery, and the second shot, according to a statement made by the defendant to one of the police officers and elicited from the officer by counsel for the defendant upon cross examination, was for the humanitarian purpose of putting an end to Wofford's misery. Upon fulfilling this purpose, the defendant left Wofford lying face downward in a ditch on the side of the road, dead as a result of the shots fired by John K. Robinson. Other incriminating acts of the defendant in relation to the homicide were amply proved by the testimony of the seven witnesses for the State.

No testimony was offered by the defendant who previously had confessed to having killed Wofford at the time and place charged, and had made full statements to the investigating officers, testimony of which was duly given by those officers upon the trial, during the course of which the defendant, through his counsel (who had been appointed by the Court to serve in that capacity), also admitted the homicide.

In their efforts to exclude testimony which they deemed immaterial to the issues or injurious to the rights of their client, and in their cross examination of the witnesses, and in the subsequent phases of their duties, including the preparation of the case for appeal and the printed brief and oral argument before this Court, the attorneys for the defendant rendered capable and meritorious service, as is always ex-

pected by the Court, in discharging the responsibilities of their appointment.

The oral testimony of the witnesses was neither refuted nor often challenged, and there is ample and corroborated testimony supporting the essential elements of the offense, with which the defendant is charged.

The jury was duly charged by the Court, to which charge no exceptions were made. Following the jury's verdict of guilty, a motion for a new trial was made by counsel for the appellant upon grounds relating to the admission in evidence, over the objection of counsel for the defendant, of certain photographs depicting the body of the deceased in various positions, and depicting the wounds on that body. The motion was refused, and a date for the execution of the sentence of electrocution was fixed by the Court, whereupon the defendant entered an appeal to this Court upon six exceptions, the grounds of which had been preserved in the motion for a new trial, which exceptions raise no questions other than those pertaining to the admission in evidence of the five photographs (whose authenticity is admitted by counsel for defendant) made following the discovery of the body of the deceased, and duly identified as the body of Kenneth J. Wofford. Two of the photographs reveal the point where one of the shots entered the back of the decedent; two others indicate the point where that bullet left the body. Two of the foregoing photographs reveal the incision made by the physician in the back of the head at the point where the other bullet entered the head, and the fifth picture, made on the night of the homicide, shows the body at the location at which it was found. Most of the photographs were used by the physician on the witness stand in pointing out the wounds on the body in locations which would be sufficient to cause death.

We adopt, in different words, the analysis of the exceptions made by counsel for the defendant, in stating the questions for our determination to be: Were these pictures ma-

terial to the issue? Did they tend to inflame the minds of the jury? Was it error to admit in evidence two pictures which depicted the condition of the head of the decedent after an incision had been made, thus changing the aspect which it had presented immediately after the infliction of the wound?

Under the circumstances of this particular case in which a confession had been made and was never retracted, and where much was admitted by defendant's counsel upon the trial, it would seem that the State was in possession of ample evidence with which to sustain its charge without the necessity of offering the photographs in evidence. Nevertheless, it is true that with two exceptions, counsel for defendant conducted a cross examination of each of the witnesses for the State, and it thus does not appear from the record whether the defendant relied solely upon a plea for mercy, or whether some other defenses were contemplated. Furthermore, it was only after the State had concluded the presentation of its case that it was announced by counsel that the defendant would not offer any testimony. The State, therefore, seems to have been in no position to know what defenses the defendant might be preparing to interpose or to rely upon, and while in our opinion it would have been better if the photographs had been withheld until and unless they became necessary for the purpose of refuting any possible subsequent testimony, it is nevertheless understandable that the solicitor wished the record to contain evidence sufficient to establish the charge which the State had made.

The photographs were equally as relevant to the issue, and no less material to it, as was the spoken testimony, which in itself portrayed a heinous offense. This was well expressed by the trial Judge who said in overruling the motion for a new trial: "I could not see anything by way of photographic representation that could add anything to the descriptive words of this horrible event." The photographs, it is true, were only corroborative of the

spoken word, and proved to be unnecessary in this particular case, but they were no more than harmless surplusage. They showed material conditions which existed, and were not inflammable fuel to be consumed by the minds of the jurors, nor do we think that they were calculated to arouse the prejudices of the jury.

Likewise, we see no merit in the contention that in two of the pictures the back of the head is shown after an incision had been made by a physician instead of showing the condition left by the bullet. Dr. Hugh S. Black, a physician, identified the picture which mainly depicted the condition of the head after the incision had been made, and testified as to the point where the shot entered, fractured and shattered the skull, and explained clearly that he made the incision shown in the picture, and that a part of the bullet was removed from the skull and brain. By reason of this explanation, the jury could have been under no misapprehension of the fact that the incision was not made by the defendant; and that the appearance of the back of the head following this slight operation did not depict the condition immediately after the lethal wound was inflicted.

We see no error, certainly no harmful error, on the part of the trial Judge, in admitting these exhibits in evidence. Only a year ago, in the case of *State v. Gregory,* 198 S. C., 98, 16 S. E. (2d), 532, 534, this Court reaffirmed in the following language the old and settled principle: "* * * we repeat the time-honored tenet that ordinarily the conduct of a trial, including the admission and rejection of proffered testimony, is largely within the sound discretion of the trial Judge and his exercise of such will not be disturbed by this Court on appeal unless it can be shown that there has been an abuse of discretion, a commission of legal error in its exercise, and that the rights of the appellant have been thereby prejudiced. * * *"

In conformity with this broad principle of evidence, and applying it with greater particularity to a situation more

closely related to that which exists in the case at bar, this Court has said in the case of *State v. Edwards,* 194 S. C., 410, 10 S. E. (2d), 587, 588:

"The determination of the relevancy and materiality of a photograph is left to the sound discretion of the trial Judge. We agree that photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or not substantially necessary to show material facts or conditions. The picture showed the head and torso of the dead Negro woman, Maggie McDaniel, and was introduced in evidence when Dr. W. L. Glennon was on the stand. The doctor had examined the dead body and the fatal wound forty-eight to seventy-two hours after the commission of the crime, and he identified the picture as being that of the woman upon whose body he had conducted a post-mortem.  *  *  *

"In our opinion the trial Judge did not abuse his discretion in admitting the photograph as being relevant, nor can we attach any importance, in view of the facts of this case, to the contention that the photograph prejudiced the jury against the defendant. Everything depicted by the photograph was, subsequent to its introduction, testified to in detail by the witnesses."

Similarly, in the case of *State v. Chambers et al.,* 194 S. C., 197, 9 S. E. (2d), 549, one of the questions to be determined by this Court was whether there was error in admitting into evidence, over objection, the bloody clothing of the prosecutor. In that case this Court used the following language on page 203 of the State reports, on page 551 of 9 S. E. (2d): "*  *.  *  such a question as to the admissibility of evidence must be, and is, largely within the sound discretion of the trial Court and we do not find from the record before us that there was any erroneous exercise of such in this case.  *  *  *"

In the more recent case of *State v. Mishoe et al.,* 198 S. C., 215, 17 S. E. (2d), 142, in which counsel for the

State in a murder trial exhibited to the jury, during argument, a bloody undershirt which had been worn by the deceased at the time of his death, this Court held that under the facts of that case there was no impropriety in the exhibition of the garment or in referring to it in the argument.

The judgment of the trial Court is affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.