1930

The STATE, Respondent v. Robert HAMBRIGHT, Appellant.

(426 S.E. (2d) 806)

Court of Appeals

*Robert Marshall Jones*, Rock Hill, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty., Rakale Buchanan Smith,* Columbia, and *Sol. Larry F. Grant,* York, *for respondent.*

Heard Oct. 12, 1992.

Decided Dec. 21, 1992.

BELL, Judge:

Robert Hambright was convicted of involuntary manslaughter in connection with the death of Jonathan Burrell. He appeals, contending the circuit court erred in (1) refusing his motion for a directed verdict of acquittal; (2) allowing the State to introduce a tape recording into evidence; and (3) allowing the State to introduce certain photographs into evidence. We affirm.

Viewed in the light most favorable to the State, the evidence proved the following facts. For at least three years prior to the incident in question, Hambright had been illegally

selling distilled spirits to high school students. The sales took place at Hambright's house.

At about six-thirty o'clock on the evening of December 14, 1990, Burrell, a high school senior, drove with a classmate, Scott Clark, to Hambright's house in Burrell's black Volkswagen automobile. While Burrell waited in the car about ten feet from the house, Clark went in through the back door and purchased from Hambright two pint bottles of Smirnoff vodka, one for himself and one for Burrell. Shortly thereafter Burrell and Clark drank both pints of vodka with orange juice. Then they went to a local high school basketball game to meet two friends, Matt Goodwin and Jeremy Surratt. The four left the game within fifteen minutes and drove to Hambright's house, where Goodwin went inside and purchased two pints of Seagram's 7 whiskey from Hambright while the others waited in Hambright's driveway. They then drove to a party at the house of another high school student, Michael Faust, where they stayed for about thirty minutes. While they were there, Clark became sick from the alcohol. Burrell, joined by Goodwin and Surratt, drove Clark home in his Volkswagen. After they delivered Clark, they picked up a friend, Sean Kyle, and started back to Faust's house. As Burrell was driving down a city street, he lost control of the car and collided with a telephone pole.

Burrell died from injuries sustained in the crash. An autopsy revealed he had multiple internal injuries, including a fractured spine, bruised lungs, large lacerations of the liver, and a left kidney torn completely in half. The doctor who performed the autopsy testified it would take "tremendous force" to cause these injuries. The doctor also testified that Burrell's blood alcohol level was 169 milligrams per deciliter. He stated that this level was significantly above what is considered legally and medically "under the influence of alcohol," that it would "significantly impair" Burrell's ability to drive a car, and that alcohol was a significant contributing factor to Burrell's death.

## I.

Hambright contends the trial judge erred in denying his motion for a directed verdict of acquittal. A motion for a directed verdict of acquittal must be denied and

the case submitted to the jury if there is any evidence, direct or circumstantial, reasonably tending to prove the guilt of the accused. *State v. Mathis*, 287 S.C. 589, 340 S.E. (2d) 538 (1986). At the directed verdict stage, the court is concerned only with the existence of evidence, not with its weight. *State v. Venters*, 300 S.C. 260, 387 S.E. (2d) 270 (1990).

Hambright argues there was no evidence of a causal relation between the consumption of alcohol by Burrell and the accident which caused his death. The testimony outlined above shows such evidence was presented at trial. Hambright's contention is patently without merit.

Hambright also claims there was no evidence he could reasonably foresee his selling alcohol to minors might result in injury or death. Several factors are relevant to whether one who sells alcohol to a minor can reasonably foresee the underaged purchaser will share the alcohol with other minors, who will, in turn, become intoxicated and cause injury to themselves or others. Among these factors are: the quantity and character of the beverages purchased; the time of sale; the place of sale; the seller's opportunity to observe other persons on the premises or in a vehicle with the underaged purchaser; and any other relevant circumstances of the sale or the seller's knowledge. *See Steele v. Smith-Rogers Oil Co.*, — S.C. —, 413 S.E. (2d) 329 (Ct. App. 1992), *cert. denied* (S.C. filed May 2, 1992) (Davis Adv. Sh. No. 12).

The State introduced evidence relating to each of these factors at trial. At the time of the sale, Hambright had reason to know Clark was an underaged high school student. He had an opportunity to observe Burrell with Clark in the Volkswagen. The sale took place on the Friday night of a home basketball game at the local high school, a time when young males commonly engage in social drinking. Hambright knew high school students bought liquor from him when they were getting ready to "party." He knew they got drunk and drove cars. The quantity and type of alcohol he sold Clark—two separate pints of vodka—indicated the liquor would be shared and that it would lead to intoxication. Hambright was aware drunk driving could cause a fatal accident. The existence of this evidence entitled the State to go to the jury on

the issue of foreseeability. Hambright's argument to the contrary is plainly without merit.[1]

## II.

The Wednesday after Burrell's fatal Friday night accident, Clark cooperated with the local police department in making a controlled undercover purchase of alcohol from Hambright. The police wired Clark with a transmitter and a tape recorder, gave him six one dollar bills, then drove with him to Hambright's house. Clark had a conversation with Hambright while he purchased a pint of vodka with the money. At trial, the State introduced two tapes of the conversation over Hambright's objection. Hambright argues that the recorded conversation was "so prejudicial the tapes should have been excluded as evidence."

During the conversation with Clark, Hambright made several incriminating statements, including the following:

> [Y]ou're a teenager, I know that, you're underage, ain't that right? . . . And if you cut me out, you won't get nothing, you know what I mean. * * * * Most of my customers come here, they're getting ready to have a party and stuff. * * * * And they get drunk ya know and then they'll drive, like that blonde headed boy three weeks ago and there was another fella come in here with the boy got killed. * * * * And I know damn well, don't drive if you get drunk, you know what I mean, you'll kill yourself . . . you go down here and get killed, they'll get me for murder. * * * * The main thing, don't go out here and get killed. . . . [I]f you go out there and drink that vodka and . . . get killed, they can get me for murder . . . they'll take everything I got.

---

[1] Hambright also argues the State failed to prove Burrell was a member of the class of persons protected by the statute prohibiting the sale of alcohol to minors. The argument is misplaced. This case is a criminal prosecution brought by the State, not a civil suit brought by the injured party. The question of whether Burrell was within the class of persons the statute was designed to protect so as to give him a private right of action against one violating the statute is irrelevant to this criminal proceeding. Such a showing was not necessary for the State to establish the elements of involuntary manslaughter. See S.C. Code Ann. § 16-3-60 (1976) (showing of criminal negligence, the reckless disregard of the safety of others, supports conviction for involuntary manslaughter).

Hambright does not contend these statements were not relevant and probative to show intent, reckless disregard for the safety of others, foreseeability of injury and lack of mistake in illegally selling alcohol to minors. These were all material to prove the charge of involuntary manslaughter.

As a general rule, evidence of statements made by a person accused of a crime are admissible against him. *State v. Plyler*, 275 S.C. 291, 270 S.E. (2d) 126 (1980). Moreover, evidence relevant to establish a material element of the offense charged is not to be excluded merely because it incidentally reveals the accused's guilt of another crime. *State v. Green*, 261 S.C. 366, 200 S.E. (2d) 74 (1973); *State v. Tillman*, 304 S.C. 512, 405 S.E. (2d) 607 (Ct. App. 1991), *cert. denied*, (S.C. filed Sept. 14, 1991) (Davis Adv. Sh. No. 21). The trial judge did not err in admitting the tape recorded statements into evidence.

## III.

Finally, Hambright contends the trial judge improperly admitted photographs of Burrell's automobile into evidence, because they showed it in a substantially altered condition from the time of the accident. The photographs show the car with its top removed and the back seat pulled up. A police officer who investigated the accident testified that emergency medical personnel cut the top off the car and pulled it slightly away from the telephone pole it struck in order to rescue two passengers trapped in the back seat of the vehicle. The seat also had to be moved to extricate the passengers. Otherwise the photographs represented the same condition the car was in after it hit the pole. The State introduced the pictures to establish the force of the impact and to corroborate testimony that excessive speed was a factor causing the accident. The court admitted the photographs subject to the right of the defense to cross-examine as to changes made that altered the appearance of the vehicle from the way it looked immediately after the accident.

The admission of photographic evidence rests within the sound discretion of the trial judge and his decision will not be disturbed on appeal unless there has been a clear abuse of discretion resulting in prejudice to the defendant. *See State v. Todd*, 290 S.C. 212, 349 S.E. (2d) 339 (1986).

Ordinarily, the admission of a photograph to corroborate testimony is not an abuse of discretion. *Id.; see also State v. Robinson*, 201 S.C. 230, 22 S.E. (2d) 587 (1942).

Although the photographs in question showed the car in an altered condition, the jury was made fully aware of these changes. There was testimony that the top of the car and the back seat had been removed by emergency medical personnel when they arrived at the scene. Defense counsel had a full opportunity to cross-examine witnesses concerning these changes in the appearance of the car. The jury was not misled to think these alterations were caused by the collision itself or that the impact damaged the car worse than it actually was. On the contrary, the jury was given a clear explanation of what damage was caused by the accident and what was a result of rescue efforts. We find no abuse of discretion in admitting the photographs into evidence.

For the reasons stated, the judgment is

Affirmed.

CURETON, J., and BAROODY, Acting Judge, concur.