**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-7556**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JARNARO C. MIDDLETON,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Patrick Michael Duffy, Senior District Judge. (2:04-cr-01094-PMD-1; 2:16-cv-01327-PMD)

Argued: October 24, 2017                    Decided: February 26, 2018
                        Amended: February 27, 2018

Before GREGORY, Chief Judge, FLOYD, and HARRIS, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Harris joined. Judge Floyd joined in part and concurred in the judgment. Judge Floyd wrote a concurring opinion, in which Judge Harris joined as to Parts II.A. and B.

**ARGUED:** Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. William Jacob Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:** Beth Drake, United States Attorney, Columbia, South Carolina, Eric J. Klumb, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

GREGORY, Chief Judge:

Jarnaro Carlos Middleton was sentenced as an armed career criminal pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Middleton challenges the district court's determination that his prior conviction for South Carolina involuntary manslaughter qualifies as a violent felony under the ACCA. Due to the idiosyncrasies of the Supreme Court's "categorical approach," the ultimate issue in this case is whether selling alcohol to a minor involves the requisite use of violent force. We conclude that it does not and reverse.

I.

On December 29, 2005, Middleton pled guilty to being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Defendants who violate § 922(g) typically face a sentence of up to ten years' imprisonment. *See* 18 U.S.C. § 924(a)(2). Under the ACCA, however, § 922(g) violators who have been convicted of three or more violent felonies or serious drug offenses qualify as armed career criminals and are subject to a fifteen-year mandatory minimum sentence. *Id.* § 924(e)(1). According to Middleton's Pre-sentence Report, three of his prior South Carolina convictions qualified as violent felonies under the ACCA: (1) a 1976 conviction for housebreaking; (2) a 1980 conviction for involuntary manslaughter; and (3) a 1990 conviction for trafficking and conspiracy to traffic cocaine. At sentencing, the district court found Middleton to be an armed career criminal and sentenced him to fifteen years' imprisonment.

2

Middleton's direct appeal left this conviction and sentence unchanged. Middleton then sought, unsuccessfully, post-conviction relief under 28 U.S.C. § 2255. In 2016, Middleton requested and this Court granted authorization to file a second § 2255 petition in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (hereinafter "*Johnson II*"), which invalidated part of the ACCA's definition of a violent felony. *Id.* at 2563.

In his second § 2255 petition, Middleton argued that all three of his prior felony convictions no longer qualify as violent felonies under the ACCA. On November 3, 2016, the district court rejected Middleton's arguments and dismissed the petition. However, the court issued a certificate of appealability with respect to whether Middleton's South Carolina involuntary manslaughter conviction meets the ACCA's definition of a violent felony, post-*Johnson II*.

II.

To determine whether South Carolina involuntary manslaughter falls within the ACCA's definition of a violent felony, we apply the "categorical approach." *United States v. Baxter*, 642 F.3d 475, 476 (4th Cir. 2011). Under the traditional categorical approach, this Court is "bound by the interpretation of [the] offense articulated by that state's courts." *See United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017). This characteristic of the categorical approach is sometimes counterintuitive because it requires courts to review the "most innocent conduct" that the law criminalizes, rather than the specific facts on which the defendant was convicted. *See United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir.

3

2008). Notwithstanding the categorical approach's quirks, in-depth analysis of state law helps to ensure that courts analyze realistic criminal conduct and not just "legal imagination." *See Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007). After determining the minimum conduct needed to commit an offense, we then compare the elements of the offense to the ACCA's definition of violent felony. *United States v. Doctor*, 842 F.3d 306, 309 (4th Cir. 2016). If the offense "sweeps more broadly" than the ACCA's definition of a violent felony, the offense does not qualify as an ACCA predicate. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

We review de novo whether a prior conviction qualifies as an ACCA violent felony. *United States v. Hemingway*, 734 F.3d 323, 331 (4th Cir. 2013). We begin with the ACCA's definition of violent felony and then compare it to the elements of South Carolina involuntary manslaughter.

A.

The ACCA defines a "violent felony" as any crime, punishable by more than a year in prison, that—

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B). Subsection (i) is commonly referred to as the "force clause." *United States v. Gardner*, 823 F.3d 793, 802 (4th Cir. 2016). The language in subsection (ii) beginning with "or otherwise" is commonly referred to as the "residual clause." *Beckles v. United*

4

*States*, 137 S. Ct. 886, 891 (2017). In *Johnson II*, the Supreme Court struck down the residual clause as unconstitutionally vague. 135 S. Ct. at 2562–63. Thus, the effective language in subsection (ii) now reads, "is burglary, arson, or extortion, [or] involves use of explosives." *See id.*; 18 U.S.C. § 924(e)(2)(B)(ii).

It is undisputed that South Carolina involuntary manslaughter does not qualify as a violent felony under subsection (ii) as "amended" by *Johnson II*. The offense cannot be categorized as burglary, arson, or extortion; nor does the offense require the use of explosives. *See State v. Collins*, 763 S.E.2d 22, 26 (S.C. 2014) (discussing the elements of South Carolina involuntary manslaughter). And although this Court held in *United States v. Williams*, 67 F.3d 527 (4th Cir. 1995), that South Carolina involuntary manslaughter qualifies as a violent felony under subsection (ii), that case relied on the residual clause. *Id.* at 528 (finding that South Carolina involuntary manslaughter involved conduct that presented a "serious potential risk of physical injury to another."). After *Johnson II*, our decision in *Williams* no longer reaches the issue presented here. Thus, the only question before us is whether South Carolina's involuntary manslaughter offense qualifies as a violent felony under subsection (i), the ACCA's "force clause." *See* 18 U.S.C. § 924(e)(2)(B)(i).

The ACCA's force clause requires "the use, attempted use, or threatened use of *physical force* against the person of another." *Id.* (emphasis added). Congress did not define the term "physical force." *Johnson v. United States*, 559 U.S. 133, 138 (2010) (hereinafter "*Johnson I*"). But the Supreme Court gave the phrase its ordinary meaning: "force exerted by and through concrete bodies" as opposed to "intellectual force or

5

emotional force." *Id.* In *Johnson I*, the Court further explained that "because the term 'physical force' contributes to the definition of a 'violent felony,' it is understood to mean 'violent force—that is, force capable of causing physical pain or injury to another person.'" *United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017) (quoting *Johnson I*, 559 U.S. at 140). Therefore, "physical force" under the ACCA's force clause must be both physical (exerted through concrete bodies) and violent (capable of causing pain or injury to another). De minimus physical force, such as mere offensive touching, is insufficient to trigger the ACCA's force clause because it is not violent. *Compare United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (holding that North Carolina robbery is not a violent felony under the ACCA's force clause because it can be committed with minimal physical force), *with Doctor*, 842 F.3d at 309–10 (holding that South Carolina strong arm robbery is a violent felony under the ACCA's force clause because it requires violence or the threat of physical force).

B.

Middleton argues that South Carolina involuntary manslaughter sweeps more broadly than the physical force required under the ACCA's force clause. We agree.

To establish involuntary manslaughter in South Carolina, "the State must show the defendant killed another person without malice and unintentionally while the defendant was engaged in either (1) an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) a lawful activity with a reckless disregard of the safety of others." *Collins*, 763 S.E.2d at 26. Applying the categorical approach, we look for the least culpable conduct that this offense encompasses.

6

The strongest case supporting Middleton's argument is *State v. Hambright*, 426 S.E.2d 806 (S.C. Ct. App. 1992). There, the defendant, Hambright, illegally sold alcohol from his home to high school students. 426 S.E.2d at 807. One student drove with friends to Hambright's home twice on one day. *Id.* On both occasions, a friend of the driver exited the vehicle, purchased alcohol from Hambright, and then returned to the vehicle. *Id.* The driver consumed the illegally obtained alcohol with his friends and made the ill-fated decision to drive again. *Id.* The driver died after crashing his car into a telephone pole. *Id.* The doctor who performed the driver's autopsy testified that "alcohol was a significant contributing factor to [the driver's] death," and that his injuries must have been caused by "tremendous force." *Id.* at 808. A jury convicted Hambright of involuntary manslaughter, and the Court of Appeals of South Carolina upheld his conviction. *Id.* at 810.

According to Middleton, because Hambright used no violent physical force against the victim, South Carolina involuntary manslaughter is broader than the ACCA's force clause and therefore does not qualify as a violent felony. In opposition, the Government relies on the Supreme Court's language in *United States v. Castleman*, 134 S. Ct. 1405 (2014), providing that it "is impossible to cause bodily injury without applying force in the common-law sense." *Id.* at 1415. Given this statement, the Government argues, "so too it is impossible to cause a killing, the ultimate bodily injury, without the 'force exerted by and through concrete bodies' or the 'force capable of causing physical pain or injury to another person.'" Gov't Br. at 11 (quoting *Johnson I*, 559 U.S. at 138, 140). But the Government's argument proceeds on two misunderstandings of the law: (1) The Government ignores the distinction between de minimus force, as discussed in *Castleman*,

7

and violent force, as discussed in *Johnson I*; and (2) the Government erroneously conflates the *use* of violent force with the *causation* of injury.

1.

First, *Castleman*'s discussion of force does not control this case. Castleman was convicted for violating § 922(g)(9), which prohibits any person "who has been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm. *See* 134 S. Ct. at 1408. In 18 U.S.C. § 921(a)(33)(A), Congress defines "a misdemeanor crime of domestic violence" as "an offense that . . . has, as an element, the use or attempted use of physical force." Although the definitions of a misdemeanor crime of domestic violence and a violent felony under the ACCA both contain the term "physical force," the Supreme Court has interpreted those terms differently. In *Castleman*, the Court applied the common-law definition of force—"namely, offensive touching"—to the term "physical force" in § 921(a)(33)(A). 134 S. Ct. at 1410. But in doing so, the Supreme Court recognized that the common-law definition of physical force does not apply to the ACCA's force clause. *Id.* ("We declined to read the common-law meaning of 'force' into ACCA's definition of 'violent felony,' because we found it a 'comical misfit with the defined term.'"). The force discussed in *Castleman* thus differs from the force required in the ACCA: Section 921(a)(33)(A) accepts de minimus force, but the ACCA, by contrast, requires violent force. Accordingly, the Government's attempt to extend *Castleman*'s holding to the ACCA's violent force provision fails. *See Reid*, 861 F.3d at 528 ("To be sure, *Castleman* did not construe [the] ACCA's force clause[.]").

Second, the Government, relying again on *Castleman*, erroneously argues that causing injury categorically means violent force was used. Both *Castleman* and this Court's decision in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), *abrogated by Castleman*, 134 S. Ct. 1405, undermine this claim.

As a preliminary matter, *Castleman*'s discussion of injury does not reach the issue presented here. Castleman pleaded guilty to "intentionally or knowingly caus[ing] *bodily injury*" to the mother of his child. *Id.* at 1414 (emphasis added). "Under Tennessee law, 'bodily injury' is a broad term: It 'includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty.'" *Id.* (quoting Tenn. Code Ann. § 39-11-106(a)(2) (1997)). When the Supreme Court compared the facts of Castleman's Tennessee indictment[1] to the definition of "physical force" in § 921(a)(33)(A)(ii), the Court concluded that "a 'bodily injury' must result from 'physical force,'" and that "it is impossible to cause bodily injury without applying force in the common-law sense." *Id.* at 1414–15. Thus, when the *Castleman* Court discussed "bodily injury," it spoke in terms of the Tennessee statute and de minimus force. Indeed, the majority explicitly reserved the question of whether "bodily injury" required "violent force." *See* 134 S. Ct. at 1414 ("Justice Scalia's concurrence suggests

---

[1] It should be noted that the Supreme Court looked to the facts of Castleman's indictment because it applied the "modified categorical approach." *Castleman*, 134 S. Ct. at 1414. In this case we apply the categorical approach, therefore looking to the facts of Middleton's indictment would be improper. *See United States v. Hemingway*, 734 F.3d 323, 327–28 (4th Cir. 2013) (comparing the modified categorical approach to the categorical approach).

that these forms of injury necessitate violent force, under [*Johnson I*'s] definition of that phrase. But whether or not that is so—a question we do not decide—these forms of injury do necessitate force in the common-law sense.") (internal citation omitted). Accordingly, *Castleman* does not support the Government's argument that any form of bodily injury requires violent force. *See Reid*, 861 F.3d at 528 (4th Cir. 2017) ("To be sure, *Castleman* . . . expressly reserved the question of whether the causation of 'bodily injury,' a term defined broadly under Tennessee law, would 'necessitate violent force under [*Johnson I*'s] definition of that phrase' in ACCA.").

Furthermore, the Government erroneously conflates the use of violent force with the causation of injury. But, this Court addressed the distinction between use and causation in *Torres-Miguel*, 701 F.3d 165. The issue there was whether a California criminal threat statute constituted a crime of violence pursuant to the Sentencing Guidelines.[2] 701 F.3d at 166. The Court reasoned that "an offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of a crime of violence. *Of course, a crime may result in death or serious injury without involving [the] use of physical force.*" *Id.* at 168 (emphasis added). It is well-settled that *Castleman* abrogated a portion of *Torres-Miguel*'s reasoning. "*Castleman* did not however abrogate the causation aspect of *Torres-Miguel* that 'a crime may result in death or serious

---

[2] The Sentencing Guidelines, as discussed in *Torres-Miguel*, contained a force clause that was identical to the force clause in the ACCA. Accordingly, this Court has applied *Torres-Miguel*'s reasoning in the ACCA context. *See, e.g.*, *United States v. Burns-Johnson,* 864 F.3d 313, 317–18 (4th Cir. 2017) (applying *Torres-Miguel* to the ACCA's force clause.)

10

injury without involving the use of physical force.'" *United States v. Covington*, 880 F.3d 129, 134 n.4 (4th Cir. 2018) (quoting *Torres-Miguel*, 701 F.3d at 168).

The concurrence acknowledges that this portion of *Torres-Miguel* is unaffected by *Castleman*, and thus remains good law. Nevertheless, the concurrence reasons that language in *In re Irby*, 858 F.3d 231 (4th Cir. 2017) and *Reid* somehow "undercut[s]" *Torres-Miguel*'s holding. Concur. Op. at 21. This cannot be true. "This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *[e]n banc*. Where there is direct conflict, the precedential decision is the first." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) (quoting *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988)). We decided *Torres-Miguel* in 2012, five years before *Irby* and *Reid*. And, in the last six years two separate panels of this Court have confirmed *Torres-Miguel*'s remaining validity. *See United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir. 2016); *Covington*, 880 F.3d at 134 n.4. As a matter of precedent, *Irby* and *Reid* cannot rely on *Castleman*— for a holding it did not make—in order to surmount this Court's prior decision in *Torres-Miguel*. To the extent that the concurrence's interpretation of *Irby* and *Reid* conflicts with *Torres-Miguel*, *Torres-Miguel* must prevail as binding precedent. *McMellon*, 387 F.3d at 333. "We of course are not free to disregard binding precedent." *United States v. Collins*, 773 F.3d 25, 30 (4th Cir. 2014) (Floyd, J.). Therefore, the concurrence's reliance on *Irby* and *Reid* to overrule *Torres-Miguel* is misplaced.

In *Hambright*, the Court of Appeals of South Carolina concluded that there was a "*causal* relation between the consumption of alcohol by [the driver] and the accident which

11

caused his death." *Hambright*, 426 S.E.2d at 808 (emphasis added). That finding, however does not mean that Hambright *used* sufficient violent physical force to satisfy the ACCA. *See Covington*, 880 F.3d at 134 n.4. "[T]he word 'use' conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." *Castleman*, 134 S. Ct. at 1415 (some internal quotations omitted). And, "the word 'violent' in [the ACCA] connotes a [crime with a] substantial degree of force," "such as murder, forcible rape, and assault and battery with a dangerous weapon." *Johnson I*, 559 U.S. at 140 (quoting Black's Law Dictionary). In *Hambright*, the defendant used force only to exchange alcohol for money. Hambright's actions were physical, but selling alcohol to minors, without more, falls short of the violent force *Johnson I* describes. *See id.* at 141.

Since *Johnson I*, this Court has confirmed that a defendant may cause injury indirectly as well as directly for the purposes of the ACCA's force clause. *See Reid*, 861 F.3d at 526–27. Nevertheless, Hambright's actions are in a different category. Cases that discuss indirect use of force speak about "the act of employing poison knowingly as a device to cause physical harm." *Id.* at 528. But the facts in *Hambright* do not meet this standard either. Although alcohol can be harmful, it lacks the certainty of harm of something like poison. Even if alcohol is equated to poison, Hambright's actions cannot be described as "employing [alcohol] *knowingly* as a device to cause physical harm." *See id.* (emphasis added). The South Carolina court found that Hambright acted with "*reckless* disregard for the safety of other," which falls short of *knowingly* causing harm. *Hambright*, 426 S.E.2d at 809 (emphasis added). This point is underscored by the facts. Hambright never actually interacted with the driver, but rather sold alcohol to two of the driver's

12

friends, who later shared their alcohol with the driver. *Id.* at 807. Only after several intervening steps did the driver ultimately crash. *Id.* It does not follow that any action leading to bodily injury, through however attenuated a chain of causation, necessarily qualifies as a use of violent physical force against the person of another. To hold otherwise would allow any illegal sale—be it alcohol, cigarettes, fireworks, or even a fake identification card—to trigger the ACCA's force clause, simply because physical pain or injury eventually results from the sale. The ACCA's force clause is written too narrowly to encompass such a broad range of criminal behavior.

The ACCA's *residual* clause operated as a catch-all provision to broaden the list of predicate crimes that would trigger lengthy sentences. *See James v. United States*, 550 U.S. 192, 198–99 (2007) (discussing the scope of the ACCA's residual clause as compared to the ACCA's force clause), overruled by *Johnson II*, 135 S. Ct. 2551 (2015). The ACCA's force clause, in contrast, lacks a catch-all provision, and thus applies to a more limited category of offenses. *Id.* Since *Johnson II*, federal prosecutors have attempted to stretch the bounds of the force clause to compensate for the now-invalid residual clause. But in this case, South Carolina involuntary manslaughter simply does not fit the ACCA's force clause because it can be committed through a non-violent sale.

III.

For the reasons stated above, we find that South Carolina involuntary manslaughter does not qualify as a violent felony under the ACCA's force clause. At oral argument, the Government contended that Middleton would still have the requisite number of predicate

convictions to be an armed career criminal, regardless of whether South Carolina involuntary manslaughter qualified as a violent felony. That contention was wrong. The Government now concedes, in a subsequent letter to the Court, that if South Carolina involuntary manslaughter is not a violent felony, Middleton cannot be considered an armed career criminal. Accordingly, we reverse the district court's denial of post-conviction relief and remand this case for immediate resentencing.

*REVERSED AND REMANDED*

FLOYD, Circuit Judge, concurring in part and concurring in the judgment, with whom Judge HARRIS joins as to Parts II.A. and B.:

The majority concludes that a conviction for South Carolina involuntary manslaughter does not categorically qualify as a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i). While I agree with that conclusion, I hesitate to join the majority's analysis. In my view, our recent decisions in *In re Irby*, 858 F.3d 231 (4th Cir. 2017), and *United States v. Reid*, 861 F.3d 523 (4th Cir. 2017), undermine the majority's reasoning that South Carolina involuntary manslaughter can be committed with *de minimis* force and by simply causing injury without using force. Nevertheless, I would hold that South Carolina involuntary manslaughter cannot be an ACCA predicate because, although the ACCA force clause requires a higher degree of *mens rea* than recklessness, an individual can be convicted of involuntary manslaughter in South Carolina based on reckless conduct. Therefore, while I write separately as to Part II.B, I concur in part and concur in the judgment reversing the denial of habeas relief.

I.

The majority's analysis hinges on (1) the distinction between *de minimis* force, as discussed in *United States v. Castleman*, 134 S. Ct. 1405, 1410 (2014), and violent force, as discussed in *Johnson v. United States*, 559 U.S. 133, 140 (2010), and (2) the distinction between use of force and causation of injury. The majority first explains that the government erroneously tried to extend *Castleman*'s common-law definition of "force," which can be satisfied with offensive touching, to the ACCA force clause, which requires

15

violent force. Next, the majority relies on the distinction between use of force and causation of injury that we drew in *United States v. Torres-Miguel*, 701 F.3d 165, 168 (4th Cir. 2012), to observe that South Carolina involuntary manslaughter can be committed by merely causing an injury without using force. In my view, neither explanation can stand.

A.

The ACCA enhances the sentence of an armed career criminal who "has three previous convictions . . . for a violent felony . . . ." 18 U.S.C. § 924(e)(1). The ACCA force clause defines "violent felony" as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." 18 U.S.C. § 924(e)(2)(B)(i). The phrase "use . . . of physical force" in the ACCA force clause is commonly understood as requiring both violent force and a requisite level of *mens rea*. *See Johnson*, 559 U.S. at 140 ("We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force . . . ." ); *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("The key phrase in [18 U.S.C.] § 16(a)—the 'use . . . of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct.").

The Supreme Court in *Johnson* defined "physical force" in the ACCA force clause as "*violent* force—that is, force capable of causing physical pain or injury to another person" because "physical force" was used to define the statutory category of "violent feloni[es]." *Johnson*, 559 U.S. at 140. On the other hand, the Supreme Court in *Castleman* defined "physical force" in the misdemeanor crime of domestic violence (MCDV) force clause, 18 U.S.C. § 921(a)(33)(A)(ii), according to the common-law meaning of "force"

16

that can be satisfied by offensive touching, because "physical force" was used to define MCDV offenses, which are routinely prosecuted as general assault and battery, not violent felonies. *Castleman*, 134 S. Ct. at 1410–13.

In *Castleman*, the Supreme Court also elaborated how "physical force" may be applied both directly and indirectly. The Supreme Court reasoned that " 'physical force' is simply 'force exerted by and through concrete bodies,' and observed that, under common law, " 'force' encompasses even its indirect application," such as administering a poison, infecting someone with a disease, or resorting to some intangible substance, such as a laser beam. *Id.* at 1414 (first quoting *Johnson*, 559 U.S. at 138; and then quoting *Johnson*, 559 U.S. at 139). "[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force," and "[t]hat the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id*. at 1414, 1415. The Supreme Court, however, "expressly reserved the question of whether the causation of 'bodily injury[]' . . . would 'necessitate violent force under *Johnson*'s definition of that phrase' in [the] ACCA." *Reid*, 861 F.3d at 528 (quoting *Castleman*, 134 S. Ct. at 1414).

Contrary to the majority's attempt to limit *Castleman* to the MCDV force clause, Maj. Op. at 8 ("*Castleman*'s discussion of force does not control this case."), this Court in *Irby* and *Reid* already extended *Castleman*'s reasoning to other force clauses, including the ACCA force clause. In *Irby*, this Court relied on both *Johnson* and *Castleman* to hold that federal second-degree retaliatory murder constitutes a "crime of violence" under the force clause in 18 U.S.C. § 924(c)(3), despite the fact that it could be committed "without applying direct force[.]" *Irby*, 858 F.3d at 236. First relying on *Johnson*'s definition of

17

"physical force," this Court reasoned that "unlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.' " *Id.*; *see also id.* at 238 ("[O]ne cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another"). And then, relying on *Castleman*, this Court found it immaterial that physical force was applied indirectly through convincing another person to expose themselves to hazardous chemicals. *Id.* at 236 ("*Castleman* forecloses the argument that indirect means of applying force are not a use of force.").

Similarly, this Court in *Reid* adopted "the relevant aspects of [*Castleman*'s] reasoning" and "conclude[d] that [the] ACCA's phrase 'use of physical force' includes force applied directly or indirectly." *Reid*, 861 F.3d at 528–29. In *Reid*, we upheld as an ACCA predicate a violation of Virginia Code § 18.2–55, which criminalizes a knowing infliction of bodily injury on a juvenile detention facility employee. *Id.* at 526. In so doing, this Court rejected Reid's argument that indirect methods of inflicting injury—such as "intentionally (1) pouring water on the floor, causing an officer to slip, (2) pulling a chair out from underneath an officer before he sits, (3) removing screws from a chair or stair rail, or (4) even poisoning"—"cause injury passively so as not to constitute the 'use of force' " under the ACCA. *Id.* at 526. It was enough that the § 18.2–55 violation involved "force capable of causing physical pain or injury," even if the force was applied indirectly. *Id.* at 529. Thus, as to the question of whether the causation of bodily injury would necessitate violent force under the ACCA, this Court answered in the affirmative. *See id.* at 528–29.

18

B.

With these principles in mind, I find that the majority's analysis does not adequately address this Court's post-*Castleman* decisions in *Irby*, 858 F.3d at 236, 238, and *Reid*, 861 F.3d at 528–29.

1.

The majority first explains that the government conflates *de minimis* force with violence force. Maj. Op. at 8. While *de minimis* force is insufficient under the ACCA, *see United States v. Gardner*, 823 F.3d 793, 803–04 (4th Cir. 2016), this Court's statements in *Irby* regarding physical force suggest that South Carolina involuntary manslaughter necessarily involves violent force, *Irby*, 858 F.3d at 235–36. Although *Irby* did not construe the ACCA force clause, it relied on the ACCA's definition of "physical force" as defined in *Johnson*, 559 U.S. at 140. *See Irby*, 858 F.3d at 235–36. Most notably, this Court observed in *Irby* that "unlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.' " *Id.* at 236. Because involuntary manslaughter is a proscription against an unlawful killing of another, it must necessarily require violent force—force capable of causing physical pain or injury. *See id.* The majority does not address this important observation.[1]

---

[1] Even *State v. Hambright*, 426 S.E.2d 806, 808 (S.C. Ct. App. 1992), the case cited by the majority for the proposition that South Carolina involuntary manslaughter can be committed without violent force, Maj. Op. at 11–12, unquestionably involved "force capable of causing physical pain or injury to another person," *Johnson*, 559 U.S. at 140. As the South Carolina Court of Appeals noted, the victim died because of injuries caused by "tremendous force" from the car crash, *Hambright*, 426 S.E.2d at 808, which is

19

2.

Next, the majority opinion explains that the *causation* of an unlawful killing does not itself qualify as the *use* of force required to satisfy the ACCA force clause, thus drawing a distinction between use of force and causation of injury. The majority explains that the unlawful killing in *State v. Hambright*, 426 S.E.2d 806, 808 (S.C. Ct. App. 1992), that was *caused* by a car crash after an illegal sale of alcohol to minors did not amount to the *use* of physical force, because "[t]he word 'use' conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." Maj. Op. at 12 (quoting *Castleman*, 134 S. Ct. at 1415). Instead, relying on this Court's decision in *Torres-Miguel*, 701 F.3d at 168, the majority explains that there was *causation* of death, which it concludes is not the same as *use* of force. But in light of our precedents, I question the viability of distinguishing between use of force and causation of injury.

Before the Supreme Court decided *Castleman*, this Court drew two conceptual distinctions in analyzing "physical force": (1) direct versus indirect application of force, and (2) use of force versus causation of injury. *Torres-Miguel*, 701 F.3d at 168; *see also United States v. Covington*, 880 F.3d 129, 134 n.4 (4th Cir. 2018). Previously, this Court held that indirect application of force, such as use of poison, does not amount to "use . . . of physical force" under the meaning of the ACCA. *Torres-Miguel*, 701 F.3d at 168. *Castleman* abrogated *Torres-Miguel*'s first distinction, and this Court now recognizes that

---

consistent with *Irby*'s observation that an unlawful killing requires force capable of causing pain or injury, *Irby*, 858 F.3d at 236.

20

indirect application of force may constitute "use of . . . physical force" under the ACCA. *Covington*, 880 F.3d at 134 ("[T]his Court has confirmed and reaffirmed in several decisions that the direct versus indirect use of force distinction articulated in *Torres-Miguel* has been abrogated by *Castleman*.").

After *Castleman*, *Torres-Miguel* stands on its remaining leg—the distinction between use of force and causation of injury. *See id.* at 134 n.4 ("*Castleman* did not however abrogate the causation aspect of *Torres-Miguel*"). The premise of this distinction was that "a crime may *result* in death or serious injury without involving *use* of physical force." *Torres-Miguel*, 701 F.3d at 168. Therefore, under *Torres-Miguel*, a crime that results in death or serious injury may not be a predicate offense under the ACCA or other force clauses. *See id.* at 169. Indeed, the majority's analysis turns on this distinction. *See* Maj. Op. at 9–13.

In my view, however, this Court's post-*Castleman* decisions in *Irby* and *Reid* raise questions as to whether such a distinction remains viable. For starters, *Irby*'s observations directly undercut *Torres-Miguel*'s premise for making such a distinction. *Compare Irby*, 858 F.3d at 236 ("[U]nlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.' "), *with Torres-Miguel*, 701 F.3d at 168 ("[A] crime may *result* in death or serious injury without involving *use* of physical force.").

More significantly, causation of injury necessarily involves either direct or indirect application of force. *See Reid*, 861 F.3d at 528–29; *see also Castleman*, 134 S. Ct. 1414 ("[T]he knowing or intentional causation of bodily injury necessarily involves the use of

21

physical force."). *Reid* implicitly analyzed causation of injury as indirect application of force by upholding a violation of Virginia Code § 18.2–55 as a "violent felony," despite the fact that one could violate § 18.2–55 by causing an injury. *Reid*, 861 F.3d at 528. Under *Reid*, intentionally pouring water on the floor and causing an officer to slip constituted a use of force. 861 F.3d at 526; *see also Irby*, 858 F.3d at 236 (observing that causing an injury through "convincing a person to expose themselves to hazardous chemicals" constitutes an indirect application of force). Moreover, *Reid*, relying on *Castleman*, rejected the defendant's argument that "caus[ing] injury passively" does not constitute a use of force. *See Reid*, 861 F.3d at 526, 528. In other words, although *Reid* did not explicitly abrogate the use of force versus causation of injury distinction, its analysis and rejection of the defendant's causation-based arguments lead me to question the continued viability of what remains of *Torres-Miguel*.

Because the majority's analysis does not sufficiently address this Court's decisions in *Irby* and *Reid*, I do not join Part II.B of the majority's opinion.[2]

---

[2] "We of course are not free to disregard binding precedent." *United States v. Collins*, 773 F.3d 25, 30 (4th Cir. 2014). "It is to the holdings of our cases . . . that we must attend." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 551 U.S. 375, 379 (1994); *see also Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) ("[T]his Court is bound by holdings, not language."). Thus, even as this Court recognized in *Reid*, "the *holding* of *Torres-Miguel* may still stand following the Supreme Court's decision in *Castleman*." 861 F.3d 523. But we still must address whether the continued adherence to a certain pattern of *reasoning* would be sound, especially given a significant doctrinal development in this area of the law in *Castleman* and its subsequent expansion in *Irby*, and *Reid*. The majority summarily points to the dicta in footnotes in *McNeal* and *Covington* to find support for the continued viability of the reasoning behind the causation distinction, without substantively engaging with *Castleman*, *Irby*, and *Reid*.

## II.

Although I disagree with the majority's rationale, under a separate analysis, I would also conclude that South Carolina involuntary manslaughter is not a violent felony under the ACCA. In my view, South Carolina involuntary manslaughter sweeps more broadly than the ACCA because an individual can be convicted of this offense based on reckless conduct, whereas the ACCA force clause requires a higher degree of *mens rea*.

My analysis begins by returning to the example in *Hambright*, 426 S.E.2d at 808, an involuntary manslaughter case from South Carolina involving the deadly car crash caused by a sale of alcohol to minors. *Irby*, 858 F.3d at 236, informs us that violent force was unleashed in the crash, as made apparent by the resulting death, and *Reid*, 861 F.3d 528–29, similarly informs us that the defendant caused violent force to be indirectly applied against the victim through the crash. Nevertheless, it is unnatural—even absurd—to equate causing a deadly car crash through an illegal sale of alcohol to minors to "using" physical force against the person of another.

I would conclude that the defendant in *Hambright* did not "use" violent force against the victim because he caused death recklessly rather than intentionally. The word "use" in the ACCA force clause requires more than a reckless application of force or causation of injury to constitute a "use . . . of physical force." The difference in mental states distinguishes the reckless causation of death in *Hambright* that cannot constitute a "use . . . of physical force," from the intentional causation of injury in *Reid* that constituted "use of . . . physical force." *See Irby*, 858 F.3d at 236 (stating that, to constitute an use of

23

force, "it is enough that the individual *intentionally* acted to place the victim in the path of an inevitable force." (emphasis added)).

Indeed, this Court's force clause cases lead me to conclude that ACCA predicates must have, as an element, a higher degree of *mens rea* than recklessness. Therefore, South Carolina involuntary manslaughter, which only requires recklessness, categorically cannot serve as an ACCA predicate.

### A.

The word "use" found in many force clauses "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9–10 (holding Florida's DUI offense based on negligence is not a "crime of violence" that involves the "use . . . of physical force" under 18 U.S.C. § 16). "Although [the Supreme Court in] *Leocal* reserved the question of whether a reckless application of force could qualify as a 'use' of force, [this Court] answered that question . . . by ruling that recklessness was not enough." *United States v. McNeal*, 818 F.3d 141, 154–55 (4th Cir. 2016). In fact, we were not alone. As the Supreme Court observed in 2014, since *Leocal*, "the Courts of Appeals have almost uniformly held that recklessness is not sufficient." *Castleman*, 134 S. Ct. at 1414 n.8.

The word "use" in the ACCA force clause also requires a higher degree of *mens rea* than recklessness. *See United States v. Doctor*, 842 F.3d 306, 311 (4th Cir. 2016); *see also McNeal*, 818 F.3d 154–56 (concluding that the force clause under 18 U.S.C. § 924(c)(3) requires more than recklessness); *Garcia v. Gonzales*, 455 F.3d 465, 469 (4th Cir. 2006)

(stating that, under 18 U.S.C. § 16, "recklessness, like negligence is not enough to support a determination that a crime is a 'crime of violence.' ").

I would additionally conclude that the Supreme Court's recent decision in *Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016), which "conclude[d] that a reckless domestic assault qualifies as a 'misdemeanor crime of domestic violence' under [18 U.S.C.] § 922(g)(9)," does not control how we should construe the ACCA force clause. The Supreme Court expressly declined to extend its holding to the ACCA force clause. 136 S. Ct. at 2280 n.4. Furthermore, the Supreme Court expressly left open the possibility that two statutory definitions, even if they are similarly drafted, could have divergent readings or *mens rea* requirements "in light of differences in their contexts and purposes . . . ." *Id.* The Supreme Court noted that Congress's purpose in drafting the MCDV statute was "to bar those domestic abusers convicted of garden-variety assault or battery misdemeanors . . . from owning guns." *Id.* at 2280. And because 35 jurisdictions at the time of drafting the MCDV statute defined assault to include reckless infliction of harm, the Court reasoned that Congress must have wanted to link the relevant MCDV provisions to those laws. *Id.* Excluding crimes committed recklessly would have rendered the MCDV provisions "broadly inoperative" in 35 states. *Id.*

Given the divergent context of "use" and the divergent purpose of targeting armed career criminals, the ACCA force clause requires a construction different from that of the MCDV force clause. In drafting the ACCA force clause, Congress employed the word "use" differently than in the MCDV force clause. While the MCDV force clause concerns simply "the use . . of physical force" by the perpetrators, 18 U.S.C. § 921(a)(33)(A)(ii), the

25

ACCA's force clause concerns "use . . . of physical force *against the person of another*," 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).  Congress chose to "denominate 'the use of force against another' as a single, undifferentiated element."  *United States v. Hayes*, 555 U.S. 415, 421 n.4 (2009).  While the word "use" by itself is "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness," *Voisine*, 136 S. Ct. at 2279, the subsequent phrase *against the person of another* arguably conveys "the need for the perpetrator to be knowingly or purposefully (and not merely recklessly) causing the victim's bodily injury," *United States v. Bennett*, 868 F.3d 1, 18 (1st Cir.), *withdrawn* 870 F.3d 34 (1st Cir. 2017) (withdrawing the first *Bennett* opinion as moot because of Bennett's death but noting that a different panel had " 'endorse[d] and adopt[ed]' the 'reasoning' of the [first] *Bennett* opinion as its own" (quoting *United States v. Windley*, 864 F.3d 36, 37 n.2 (1st Cir. 2017) (per curiam))[3]

---

[3] The Sixth Circuit recently criticized the First Circuit's effort in its *Bennett* and *Windley* opinions to give effect to the phrase "against the person of another."  *United States v. Verwiebe*, 874 F.3d 258, 262–63 (6th Cir. 2017).  The Sixth Circuit reasoned, in dicta, that there are "no victim-less prosecutions under the *Voisine* statute" since the MCDV force clause also requires a use of force against a person.  *Id.* at 263.  The court, therefore, found no meaningful basis for distinguishing the MCDV force clause and the ACCA force clause. *Id.*  This analysis—while plausible—seems to forget two important mandates.  First, federal courts must give effect to a statute as given to us by Congress, not as we would have written ourselves.  Congress deliberately drafted the ACCA force clause to include the language "against the person of another" while omitting such a phrase in the MCDV force clause.  The word "use" should be read without rendering the phrase "against the person of another" superfluous.  *E.g.*, *Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001) ("The Court has often said that every clause and word of a statute should, if possible, be given effect." (internal quotation marks omitted)).  Furthermore, the Supreme Court admonishes us to examine the contexts and purposes of the various force clauses.  *See Voisine*, 136 S. Ct. at 2280 n.4; *see also Castleman*, 134 S. Ct. at 1410–11.  The failure to appreciate these differences would lead to broadly sweeping run-of-the-mill criminals as

26

Critically, the ACCA does not share the same purpose as the MCDV statute.  The title of the ACCA—the *Armed Career Criminal* Act—"was not merely decorative." *United States v. Begay*, 470 F.3d 964, 981 n.3 (10th Cir. 2006) (McConnell, J., dissenting in part), *rev'd sub nom. Begay v. United States*, 553 U.S. 137 (2008).  The ACCA aims at state offenses that "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger," rather than offenses that merely "reveal a degree of callousness toward risk."  *Begay*, 553 U.S. at 146.  In sum, while Congress's broad purpose of preventing domestic abusers from possessing firearms by linking the MCDV statute to prevailing state laws justifies broadly construing the MCDV force clause, the ACCA's purpose in targeting the truly purposeful and aggressive criminals warrants a narrower reading of the word "use."

Many federal courts have examined the divergent contexts and purposes of the ACCA and the MCDV statute and similarly concluded that *Voisine* does not compel them to construe the word "use" in the ACCA to include reckless conduct.  *See, e.g.*, *United States v. Butler*, 253 F. Supp. 3d 133, 147–48 (D.D.C. 2017); *United States v. Brown*, 249 F. Supp. 3d 287, 297 (D.D.C. 2017) ("Even though the statutory language in § 921(a)(33)(A)(ii) at issue in *Voisine* largely mimics that of ACCA's [force] clause, . . . this Court follows the lead of various other District Courts in concluding that that linguistic similarity should not mean that recklessness is a sufficient mens rea for

---

violent felons subject to the heavy hand of the ACCA's sentencing enhancement.  *Cf. Johnson*, 559 U.S. at 145 (expressing the need to avoid "a comical misfit" in construing the ACCA).

purposes of ACCA's [force] clause."); *United States v. Johnson*, 227 F. Supp. 3d 1078, 1090 (N.D. Cal. 2016); *United States v. Hill*, 225 F.Supp.3d 328, 338–39 (W.D. Pa. 2016); *see also Bennett*, 868 F.3d at 23 (observing that the divergent contexts and purposes and *Voisine* leave the meaning of the ACCA ambiguous and applying the rule of lenity to conclude that Maine aggravated assault does not satisfy the ACCA force clause). While some of our sister circuits have applied *Voisine* to the ACCA force clause, they have done so without seriously considering or even discussing the divergent contexts and purposes of the ACCA and the MCDV statute. *See United States v. Pam*, 867 F.3d 1191, 1207–08 (10th Cir. 2017); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016).

I believe these divergent contexts and purposes require us to construe the word "use" in the ACCA's force clause to require a higher level of *mens rea* than recklessness.

B.

Given that the word "use" in the ACCA force clause requires a higher degree of *mens rea* than recklessness, I find that South Carolina involuntary manslaughter cannot serve as an ACCA predicate. To determine whether an offense can serve as an ACCA predicate, we apply the categorical approach, under which we "examine only the elements of the state offense and the fact of conviction, not the defendant's conduct," *Doctor*, 842 F.3d at 308, and "the minimum conduct necessary for a violation," *Gardner*, 823 F.3d at 803 (quoting *Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015)). If the minimum conduct necessary for a violation does not require the "*use . . .* of physical force," then the offense cannot be an ACCA predicate. *Id.* at 803 (emphasis added).

28

South Carolina law defines involuntary manslaughter as the unintentional killing of another without malice, requiring a showing of "criminal negligence," defined as "the reckless disregard of the safety of others." S.C. Code Ann. § 16-3-60 (2003); *State v. Scott*, 779 S.E.2d 529, 531 (S.C. 2015). South Carolina involuntary manslaughter—which criminalizes reckless conduct—does not satisfy the ACCA's *mens rea* requirement. Therefore, a conviction for South Carolina involuntary manslaughter categorically cannot serve as an ACCA predicate. For this reason, I agree with the majority that the district court's denial of habeas relief should be reversed.

## III.

For these reasons, I respectfully decline to join Part II.B of the majority's opinion, but nevertheless join in the judgment reversing the district court's denial of habeas relief.