**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**No. 16-4325**

_____

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

QUANTRELL DION REID,

                Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:15-cr-00007-MOC-1)

_____

Argued: March 22, 2017                Decided: June 28, 2017

_____

Before NIEMEYER, DUNCAN, and HARRIS, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Duncan and Judge Harris joined.

_____

**ARGUED:** Richard Lamb Brown, Jr., LAW OFFICES OF RICHARD L. BROWN, JR., Monroe, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

NIEMEYER, Circuit Judge:

After Quantrell Reid pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), the district court sentenced him to 15 years' imprisonment under the Armed Career Criminal Act ("ACCA") because he had three previous convictions for a "violent felony," *id.* § 924(e)(1). Specifically, the court found that Reid's three prior convictions under Virginia Code § 18.2-55, which has as an element the knowing and willful infliction of bodily injury, fell within ACCA's definition of "violent felony" because the state crime "has as an element the use . . . of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i).

Reid contends on appeal that his three prior convictions do not fall within ACCA's definition because § 18.2-55 can be violated in a variety of nonviolent ways. We disagree. Applying the categorical approach, we conclude that, to violate Virginia Code § 18.2-55, a defendant must necessarily use "force capable of causing physical pain or injury," which the Supreme Court has held brings a state crime within ACCA's ambit. *Johnson v. United States*, 559 U.S. 133, 140 (2010). Accordingly, we affirm.

I

The presentence report issued by the probation office recommended that Reid be sentenced as an armed career criminal based on three Virginia state court convictions for "Inflict Bodily Injury" committed in March 2004, April 2005, and July 2005. The report noted that in each case Reid was sentenced to five years' imprisonment, with a portion of

2

each sentence conditionally suspended. The report did not, however, identify the specific Virginia Code provision for "Inflict Bodily Injury."

At sentencing, Reid's counsel acknowledged that Reid had three times been convicted of violating Virginia Code § 18.2-55 for knowingly and willfully inflicting bodily injury on juvenile detention facility employees. But he argued that because common law battery is a lesser-included offense of § 18.2-55, the level of injury required to support a conviction under § 18.2-55 was no greater than that required for a common law battery conviction. Stated otherwise, he argued that § 18.2-55 was nothing more than a provision imposing a harsher penalty for a battery offense because the offense was committed against correctional facility employees. He reasoned that, because the Supreme Court has held that common law battery is not a violent felony, *see Johnson*, 559 U.S. at 140, neither is a § 18.2-55 conviction.

The government acknowledged that battery was a lesser-included offense of § 18.2-55 but argued that one of § 18.2-55's additional elements — the knowing and willful infliction of bodily injury — distinguished it from mere battery and rendered it a violent felony for purposes of § 924(e)(1). The government asserted that because every § 18.2-55 conviction required the willful injury of a person, the offense categorically required "force capable of causing physical pain or injury to another person" and thus satisfied the Supreme Court's interpretation of ACCA's "force clause," contained in § 924(e)(2)(B)(i). *Johnson*, 559 U.S. at 140.

The district court rejected Reid's objection and sentenced him to 15 years' imprisonment. From the court's judgment dated May 18, 2016, Reid filed this appeal.

3

## II

Reid contends first that the failure of the presentence report to identify the statutory citation for his convictions under Virginia law for "Inflict Bodily Injury" left the district court and the parties without "notice or certainty" about the nature of the predicate crimes, thus inviting "inference and speculation." Accordingly, he argues, the court could not properly determine whether his prior convictions satisfied ACCA's definition of "violent felony."

While the presentence report used only the label "Inflict Bodily Injury" to refer to Reid's three prior convictions, neither Reid, nor the government, nor the district court had any doubt that the offenses were violations of Virginia Code § 18.2-55, which prohibits the knowing and willful infliction of bodily injury on employees of correctional facilities. At sentencing, Reid's counsel stated to the court:

> He was convicted, Your Honor, on an 18.2-55. And in the State of Virginia, what that breaks down to is a battery by a prisoner committed against an officer.

Later in the same proceedings, Reid's counsel again informed the court of the offenses for which Reid had previously been convicted:

> I would like to say, Your Honor, you cannot get to the crime that he committed, which is 18.2-55, in Virginia without first going through battery.

Neither the court nor the parties raised any question about the prior convictions under consideration, and accordingly we reject Reid's argument that the district court was left to "inference and speculation."

4

## III

Reid next contends that, in any event, a conviction under Virginia Code § 18.2-55 does not categorically qualify as a violent felony under ACCA, arguing that it does not fall within its "force clause" because it does not have "as an element the use . . . of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i). He reasons that a § 18.2-55 violation need not be committed by force at all but rather may be committed by *indirect means*, such as "intentionally (1) pouring water on the floor, causing an officer to slip, (2) pulling a chair out from underneath an officer before he sits, (3) removing screws from a chair or stair rail, or (4) even poisoning." These methods, he argues, cause injury passively so as not to constitute the "use of force" within the meaning of § 924(e)(2)(B)(i). He reasons further that because the force clause is not applicable, then a § 18.2-55 violation could only be a violent felony under the "residual clause" in § 924(e)(2)(B)(ii), which the Supreme Court held was unconstitutionally vague in *Johnson v. United States* ("*Johnson II*"), 135 S. Ct. 2551 (2015).

The government contends that a conviction under § 18.2-55 is a violent felony under the force clause because the phrase "use of physical force" has been held by the Supreme Court to include force administered even by indirect means, such as by poisoning. *See United States v. Castleman*, 134 S. Ct. 1405, 1414–15 (2014).

As the parties recognize, ACCA provides that a person convicted under 18 U.S.C. § 922(g) — as Reid has been — and who has "three previous convictions" for a "violent felony" "committed on occasions different from one another" must be sentenced to a

5

mandatory minimum of 15 years' imprisonment. *Id*. § 924(e)(1). As used in that subsection, "violent felony" is defined to mean:

> any crime punishable by imprisonment for a term exceeding one year . . . that —
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "force clause"]; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another [the last clause referred to as the "residual clause."]

*Id*. § 924(e)(2)(B). The residual clause was held unconstitutional in *Johnson II*, 135 S. Ct. at 2563.

In *Johnson*, the Supreme Court explained that the term "physical force," as used in ACCA's force clause, means something beyond the "mere unwanted touching" necessary to prove common law battery. *Johnson*, 559 U.S. at 142. Rather, because the term "physical force" contributes to the definition of a "violent felony," it is understood to mean "*violent* force — that is, force capable of causing physical pain or injury to another person." *Id*. at 140.

In applying this definition of "physical force" to the assessment of whether a state crime qualifies as a violent felony, we use the categorical approach. *See United States v. Doctor*, 842 F.3d 306, 308 (4th Cir. 2016). Under this approach, we may not look to the facts underlying the prior conviction, but instead must determine whether the state crime of conviction *by its elements* involves "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), *i.e.*, such

6

"force capable of causing physical pain or injury to another person," *Johnson*, 559 U.S. at 140; *see also Doctor*, 842 F.3d at 308–09. And in determining the nature of the state crime under this assessment, we are of course "bound by the interpretation of [the] offense articulated by that state's courts." *United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017) (looking to decisions of the state supreme court and intermediate appellate courts).

The three predicate convictions in this case were for violations of Virginia Code § 18.2-55, which requires for conviction that a person "confined in a state, local or regional correctional facility" or a juvenile detention facility "knowingly and willfully inflict bodily injury on" any non-prisoner lawfully in that facility. Moreover, it must be shown that the defendant acted with *the specific intent* to inflict bodily injury, and an injurious result that simply follows from an intentional act is not sufficient. *Seegars v. Commonwealth*, 445 S.E.2d 720, 722 (Va. Ct. App. 1994). Thus, it appears that § 18.2-55's element of "knowingly and willfully inflict[ing] bodily injury" on another person squarely matches ACCA's force clause, which requires force that is "capable of causing physical pain or injury," *Johnson*, 559 U.S. at 140.

Reid argues nonetheless that because the Virginia statute can be violated by "indirect means," such as by pulling a chair out from underneath an officer before he sits down or by poisoning the officer, physical force is not necessarily required to violate the statute, and it therefore is not categorically a violent felony.

To be sure, Virginia courts would likely allow convictions under § 18.2-55 based on indirect applications of force like those that Reid posits. *See*, *e.g.*, *Long v.*

7

*Commonwealth*, 379 S.E.2d 473, 475 (Va. 1989) (upholding malicious wounding conviction for releasing dog and commanding it to attack victim); *cf. Banovitch v. Commonwealth*, 83 S.E.2d 369, 370–71 (Va. 1954) (indicating that a person could commit unlawful wounding by intentionally using "certain salves and medicines" to cause the victim "bodily injury"). But Reid's argument that such indirect means do not involve the use of physical force is foreclosed by the Supreme Court's decision in *Castleman*, 134 S. Ct. 1405.

In *Castleman*, the Court addressed whether a defendant's prior conviction under Tennessee's domestic battery statute amounted to a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g), which prohibits possession of a firearm by anyone convicted of such a crime. The definition of "misdemeanor crime of domestic violence," similar to ACCA's definition of "violent felony," includes any offense that "has, as an element, the use or attempted use of physical force" against certain victims. *Id*. § 921(a)(33)(A)(ii). The *Castleman* Court did not employ *Johnson*'s construction of ACCA's force clause, but instead construed § 922(g)(9) and, given its context and purpose, construed it to encompass "the degree of force that supports a common-law battery conviction." 134 S. Ct. at 1413. Then, turning to the Tennessee domestic violence statute under which the defendant had previously been convicted, the Court held that his conviction qualified as a "misdemeanor crime of domestic violence" because the state law required that the defendant have "intentionally or knowingly cause[d] bodily injury" to the mother of the defendant's child. *Id*. at 1413–14 (alteration in original).

8

In holding that such a conviction necessarily involved the use of physical force, the *Castleman* Court rejected the defendant's argument that the Tennessee law could be violated without the use of physical force because "one [could] cause bodily injury . . . for example, by 'deceiving [the victim] into drinking a poisoned beverage, without making contact of any kind.'" 134 S. Ct. at 1414 (second alteration in original). Quoting *Johnson*, the *Castleman* Court explained that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force'" and therefore that a person need not directly contact his victim to exert "physical force." *Id*. (quoting *Johnson*, 559 U.S. at 138). The *Castleman* Court also rejected the defendant's related argument that an *indirect* causation of injury, such as by poisoning, did not amount to a "*use* of force":

> The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id*. at 1415 (alteration in original).

To be sure, *Castleman* did not construe ACCA's force clause, and it expressly reserved the question of whether the causation of "bodily injury," a term defined broadly under Tennessee law, would "necessitate violent force under *Johnson*'s definition of that phrase" in ACCA. 134 S. Ct. at 1414. But the Court's formal reservation does not foreclose application of the relevant aspects of its *reasoning*, which did not rest on any distinction between § 922(g)(9) and ACCA's force clause, § 924(e)(2)(B)(i). Indeed, the

9

Court relied significantly on *Johnson* in rejecting a proffered limitation on the term "physical force." *See Castleman*, 134 S. Ct. at 1414 ("[A]s we explained in *Johnson*, 'physical force' is simply 'force exerted by and though concrete bodies'"); *cf. id.* at 1416–17 (Scalia, J., concurring in part and concurring in the judgment) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result"). Accordingly, by applying the combination of *Johnson* and *Castleman*, we conclude that ACCA's phrase "use of physical force" includes force applied directly or indirectly.

Reid relies on our decision in *United States v. Torres-Miguel*, 701 F.3d 165, 167–69 (4th Cir. 2012), where we held that a California conviction for "willfully threaten[ing] to commit a crime which will result in death or great bodily injury" did not qualify as a "crime of violence" under the Sentencing Guidelines, which contained a force clause identical to the force clause in ACCA. The *Torres-Miguel* court stated that "a crime may *result* in death or serious injury without involving *use* of physical force," as required by the Guidelines. *Id.* at 168. As an example of such conduct, it posited that "threatening to poison another" involved "no use or threatened use of force." *Id.* at 168–69. While the *holding* of *Torres-Miguel* may still stand following the Supreme Court's decision in *Castleman*, its reasoning can no longer support an argument that the phrase "use of physical force" excludes *indirect* applications. *See In re Irby*, No. 16-601, __ F.3d __, 2017 WL 2366996, at *6–7 (4th Cir. June 1, 2017) (holding that second-degree retaliatory murder is a crime of violence under the force clause in 18 U.S.C. § 924(c) and explaining that *Torres-Miguel*'s "distinction . . . between indirect and direct applications

10

of force . . . no longer remains valid in light of *Castleman*'s explicit rejection of such a distinction").

At bottom, to accept Reid's argument would require us to take *Johnson*'s clear definition of physical force in ACCA as "force capable of causing physical pain or injury" and graft onto it an "indirect force" exception. But in light of *Johnson* and *Castleman*, we clearly cannot do so. The combination of those decisions defines the "use of physical force" to include the sorts of indirect uses of force that Reid has posited.[*]

\* \* \*

At bottom, we hold that, because Virginia Code § 18.2-55 requires that the defendant "knowingly and willfully inflict bodily injury" on the victim, a conviction under that statute falls within ACCA's definition of a violent felony and therefore serves as a predicate offense under § 924(e)(1).

AFFIRMED

---

[*] For the first time at oral argument on appeal, Reid argued additionally that because a person can violate § 18.2-55 by intentionally inflicting only *minor injuries*, such as a bruise or cut, a conviction under that provision does not categorically require the sort of "violent force" contemplated by the Supreme Court in *Johnson*. Neither of the parties, however, briefed this issue. Accordingly, we do not address it, as Reid's failure to include the issue in his opening brief constitutes a waiver of it. *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 308 (4th Cir. 2003) ("Failure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues").

11