**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4412**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CLINTON LEE RUMLEY,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Danville.  Jackson L. Kiser, Senior District Judge.  (4:08-cr-00005-JLK-JCH-1)

Argued:  December 11, 2019                    Decided:  March 13, 2020

Before NIEMEYER, MOTZ, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Richardson joined.  Judge Motz wrote a separate opinion, concurring in the judgment.

**ARGUED:**  Lisa M. Lorish, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.  **ON BRIEF:**  Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

In 2008, Clinton Rumley was convicted of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and because he had at the time at least three prior convictions for violent felonies, he received a mandatory minimum sentence of 15 years' imprisonment under the Armed Career Criminal Act ("ACCA"), *id.* § 924(e)(1). Indeed, he had no less than five prior convictions that could have been designated as ACCA predicates, but the presentence report for his 2008 sentencing identified as predicates only the four most recent of those five.

Several years later, the Supreme Court handed down *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), which substantially narrowed the definition of "violent felony" in ACCA. Relying on *Samuel Johnson*, Rumley filed a petition under 28 U.S.C. § 2255 to obtain a resentencing, arguing that two of the four prior convictions designated in his 2008 presentence report no longer qualified as ACCA predicates. The district court agreed and granted the petition, vacating his 2008 sentence and scheduling a resentencing hearing, which took place June 6, 2019.

In preparation for resentencing, the probation officer filed a revised presentence report that contained a revised list of ACCA predicate convictions, including a prior conviction that had not been so designated in Rumley's 2008 presentence report. Thereafter, the parties had the opportunity to respond to the presentence report and to submit sentencing memoranda. Finally, the district court conducted a sentencing hearing, at which it found that Rumley had three prior violent felony convictions. Therefore, it

2

again sentenced Rumley as an armed career criminal to a mandatory minimum sentence of 15 years' imprisonment.

On appeal, Rumley argues that reliance in his 2019 sentencing on a prior conviction that had not been designated as an ACCA predicate in his 2008 presentence report violated our decision in *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018). In *Hodge*, we held that in a collateral proceeding in which a predicate offense for an ACCA enhancement was disqualified under *Samuel Johnson*, the government could not substitute another conviction to replace the disqualified conviction because the defendant had not been given adequate notice so as to give him "an opportunity to contest the validity or applicability of the prior convictions upon which the statutory sentencing enhancement is based." *Id.* at 427 (cleaned up). In addition, Rumley argues that the record at his 2019 sentencing was insufficient to demonstrate the fact of the newly designated prior conviction and that, in any event, the offense of that conviction does not qualify as a "violent felony" to support an ACCA sentence enhancement.

We conclude that *Hodge* does not control the circumstances of this case, and we also reject Rumley's other challenges to the newly designated conviction. Accordingly, we affirm.

I

In preparation for Rumley's 2008 sentencing for possession of a firearm by a felon, the probation officer prepared a presentence report that listed, as part of his criminal history, over 20 prior convictions under Virginia law, and at least 5 qualified at that time

3

as violent felonies under ACCA and therefore could have been designated to support a sentencing enhancement under 18 U.S.C. § 924(e)(1). The five are: (1) a 1979 conviction for unlawful wounding; (2) a 1982 conviction for robbery by force; (3) a 1984 conviction for abduction; (4) a 1984 conviction for malicious wounding; and (5) a 1991 conviction for unlawful wounding. The 2008 presentence report designated the last four of these convictions to support its conclusion that Rumley was an armed career criminal and therefore subject to an enhanced sentence. Rumley did not object to his designation as an armed career criminal, and the district court imposed the 15-year mandatory minimum sentence required by § 924(e)(1).

Some seven years later, in 2015, the Supreme Court handed down its decision in *Samuel Johnson*, which invalidated the "residual clause" that defined "violent felony" for ACCA purposes, *see* § 924(e)(2)(B)(ii), but left in place the "force clause" that also defined "violent felony," *see* § 924(e)(2)(B)(i). 135 S. Ct. at 2563. In doing so, the *Samuel Johnson* Court narrowed significantly the class of crimes that qualify as predicate offenses under ACCA for the enhancement of sentences. *See id.* at 2557. And in 2016, the Court held that *Samuel Johnson* had announced a new rule of constitutional law that applied retroactively to cases on collateral review. *See Welch v. United States*, 136 S. Ct. 1257 (2016).

Relying on *Samuel Johnson* and *Welch*, Rumley sought authorization from this court to file a successive motion under 28 U.S.C. § 2255 to challenge some of the prior convictions that supported his 2008 enhanced sentence on the ground that they were no longer qualifying predicate convictions and, therefore, that his sentence should be vacated.

4

In particular, he argued that his 1982 conviction for robbery by force and his 1984 conviction for abduction no longer qualified as violent felonies. By order dated May 2, 2016, we granted Rumley's request, and Rumley then timely filed a motion in the district court under § 2255 to vacate his sentence. The district court granted Rumley's motion on January 17, 2019, ruling that his 1982 conviction for robbery by force and his 1984 conviction for abduction no longer qualified as ACCA predicates, meaning that of the four designated predicates in his 2008 presentence report, only two remained valid. Because ACCA requires three valid predicates to trigger enhancement, the court vacated Rumley's sentence and ordered a de novo resentencing, which took place on June 6, 2019.

Before the 2019 resentencing, the probation officer filed a draft revised presentence report, which he finalized after considering the parties' objections, and the final revised report again concluded that Rumley had three predicate convictions qualifying him as an armed career criminal for an enhanced sentence under ACCA. The paragraph in the final report that addressed ACCA enhancement deleted reference to the 1982 robbery by force and the 1984 abduction convictions but added the 1979 conviction for unlawful wounding. The 1979 conviction, while described in the 2008 presentence report, had not then been designated to support the ACCA enhancement. Rumley objected to the 2019 presentence report's inclusion of his 1979 conviction as a predicate, and both parties submitted sentencing memoranda.

In his memorandum, Rumley argued that, under our decision in *Hodge*, his 1979 conviction should not be considered in resentencing because it was not designated as an ACCA predicate in the 2008 presentence report. In addition, noting that he was 16 at the

5

time of his 1979 conviction, he argued that there was insufficient evidence to demonstrate that he was tried as an adult. Finally, he argued that, in any event, the Virginia offense of unlawful wounding did not qualify as a violent felony under ACCA. In its memorandum in response, the government referred to three documents to demonstrate the fact of conviction, attaching them as exhibits: (1) a notice dated February 13, 1979, stating that Rumley was indicted for unlawful wounding and scheduling trial for February 22, 1979; (2) a plea agreement dated February 22, 1979, and signed by Rumley, his counsel, and the attorney for Virginia, in which Rumley agreed to plead guilty to unlawful wounding in exchange for a sentence of three years, with two years suspended; and (3) an unsigned judgment dated February 22, 1979, stating that Rumley was tried as an adult and had pleaded guilty to assault "as charged in the indictment."

At the sentencing hearing on June 6, 2019, the parties argued their positions again. In addition, Rumley challenged the sufficiency of the documents submitted by the government to prove the fact of his 1979 conviction. The government presented testimony from United States Probation Officer Sidney Edwards, who identified the government's exhibits as public records from the Powhatan County Circuit Court that had been maintained in the probation office's files.

The district court overruled each of Rumley's objections to the designation of his 1979 conviction as an ACCA predicate. First, the court rejected Rumley's argument that *Hodge* barred consideration of the conviction. Second, the court found that the documents submitted by the government were "the official records of the circuit court" and were sufficient to meet the government's burden to prove the fact of conviction. Finally, the

court concluded that unlawful wounding under Virginia law is a violent felony under ACCA's "force clause," § 924(e)(2)(B)(i). The court adopted the presentence report as written, including its designation of Rumley as an armed career criminal, and again imposed a sentence of 15 years' imprisonment. With the new sentence, the district court entered an amended judgment dated June 6, 2019. From that judgment, Rumley filed this appeal.

II

Rumley contends first that the government's reliance on his 1979 conviction in support of an ACCA enhancement at his 2019 resentencing runs afoul of *Hodge* because that conviction had not been designated as an ACCA predicate at his original sentencing in 2008. *Hodge* holds that when the government did not identify a prior conviction as an ACCA predicate at sentencing, it may not do so in a collateral proceeding to preserve the enhancement.

The government contends that *Hodge* does not control, as it applied to circumstances entirely different from those presented here. It argues, "*Hodge* was decided on the pleadings on collateral review, and did not address whether a district court may consider previously unidentified convictions at a *de novo* resentencing hearing after a successful collateral attack, for which a new [presentence report] was issued that notified the defendant of the potential ACCA predicates."

In *Hodge*, the defendant challenged his ACCA-enhanced sentence in a § 2255 proceeding, contending that, as a result of *Samuel Johnson*, one of the three prior

7

convictions designated to support the enhancement no longer qualified as a predicate conviction under ACCA. While the government agreed that the challenged conviction no longer qualified, it identified another prior conviction that had not been designated for ACCA enhancement in the presentence report prior to sentencing. In those circumstances, we concluded that the government was not free "for the first time *on collateral review*" to designate a prior conviction that had not been designated during the sentencing proceeding. *Hodge*, 902 F.3d at 429 (emphasis added). We explained that "defendants have a right to adequate notice of the government's plan to seek [an ACCA] enhancement and of the convictions that may support that enhancement," which is "typically done by listing the supporting convictions in the defendant's [presentence report]." *Id.* at 427 (cleaned up). We emphasized that such notice is necessary to afford the defendants the "opportunity to contest the validity or applicability of the prior convictions upon which the statutory sentencing enhancement [was] based." *Id.* (cleaned up). And we were troubled that "[w]hereas at the sentencing the government has the burden of proving by a preponderance of the evidence that the defendant has three prior ACCA-qualifying convictions committed on different occasions, on collateral review, the defendant has the burden of proving that the convictions supporting his ACCA enhancement are infirm." *Id.* at 429–30 (cleaned up).

The concerns underlying the decision to preclude the government's late designation of a prior conviction in *Hodge*, however, do not arise here. In this case, Rumley, with his § 2255 motion, successfully challenged two designated predicate convictions supporting his 2008 sentence, relying on the Supreme Court's decision in *Samuel Johnson*. And the

8

district court, instead of considering an alternative predicate conviction in that collateral proceeding, vacated Rumley's sentence and ordered an entirely new resentencing. The new sentencing process proceeded in precisely the same manner as an initial sentencing. The probation officer issued a revised presentence report that designated prior convictions to support an ACCA enhancement, and the parties filed objections, as well as full presentence memoranda, making their arguments about those newly designated convictions. In its presentence memorandum, the government listed the evidence on which it would rely at sentencing, and at the sentencing hearing, Rumley advanced arguments challenging that evidence. The court conducted a full sentencing hearing, at which it received evidence and made findings of fact. And finally, the court ruled on the issues presented before imposing a sentence and entering a revised judgment. In this process, Rumley, unlike Hodge, had adequate notice of the designated predicate convictions, giving him a full opportunity to challenge them. Moreover, the 2019 sentencing proceeding was conducted under the burdens of proof applicable in every sentencing, and our review is conducted under direct appeal standards, rather than on standards applicable to review of collateral proceedings.

We conclude that because *Hodge* is grounded on the defendant's lack of notice and opportunity to contest an ACCA predicate identified for the first time during a collateral proceeding, *Hodge* does not govern where, as here, the defendant had both notice and a meaningful opportunity to challenge the designated predicate convictions prior to the resentencing hearing.

9

Rumley argues nonetheless that we should extend the *Hodge* rule to de novo resentencings because the government should have only "one full and fair opportunity to offer whatever support for [an] ACCA enhancement it could assemble." In this case, according to Rumley, that one full and fair opportunity was at the 2008 sentencing, where the government did not identify the 1979 unlawful wounding conviction as an ACCA predicate. We refuse Rumley's request, however, because restricting a resentencing in the fashion he proposes would not only interfere with generally applicable sentencing procedures, but would also be unwarranted in light of the rapidly changing law governing ACCA predicates.

Under 18 U.S.C. § 3661, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," and in *Pepper v. United States*, 562 U.S. 476, 490 (2011), the Supreme Court applied this rule to resentencings, noting that the sentencing framework applicable at an initial sentencing is equally applicable "at any subsequent resentencing after a sentence has been set aside on appeal." Consistent with § 3661, the *Pepper* Court indicated that a district court is entitled to consider additional relevant evidence introduced by either party at a resentencing hearing, even if that evidence had not been presented at the initial hearing. *See id.* at 490–91. We thus conclude that designating for consideration an additional ACCA predicate at resentencing does not give the government an unfair "second bite" at the apple; it is, instead, consonant with the general principle that a sentence

10

should be appropriately tailored to account for all information available to the sentencing court at the time a sentence is imposed.

Rumley also argues that the government waived its right to designate the 1979 conviction as an additional predicate at the 2019 resentencing by failing to object to the omission of that designation in the 2008 presentence report. But waiver implies knowledge and deliberateness, and in this case, the government could not have predicted the sea change that came in ACCA jurisprudence in the years after 2008 — any more than Rumley could have. At the time of the initial sentencing, it was both reasonable and consistent with existing law for the government to have relied on the four designated predicates — which already exceeded the requisite three — to support the ACCA enhancement without designating yet another duplicative and unnecessary conviction. When the law changed in 2015 (and thereafter), resulting in the invalidation of two of Rumley's prior convictions as ACCA predicates, Rumley was entitled to have his 2008 sentence vacated. But so too was the government allowed to adapt to the changing law and respond accordingly when Rumley's § 2255 motion was granted. *Cf. United States v. Bowe*, 309 F.3d 234, 238 (4th Cir. 2002) (recognizing that, consistent with the Double Jeopardy Clause, the government may seek "a second trial for a defendant who has succeeded in getting his first conviction set aside" (cleaned up)). In these circumstances, the 2019 designation of the 1979 conviction was *not* a belated attempt to remedy a failure by the government to establish the enhancement in 2008, but rather a part of a thorough resentencing process, conducted in light of the changed legal landscape. And the government was not unfairly advantaged by

the opportunity to muster available support for the enhancement after Rumley succeeded in having the sentence set aside.

We thus conclude that the district court properly concluded in the 2019 resentencing that *Hodge* did not bar consideration of Rumley's 1979 conviction as an ACCA predicate.

III

Rumley next contends that the government did not adequately prove the fact of his 1979 conviction for unlawful wounding because, as he argues, (1) the documents introduced as evidence of the conviction were not certified by a court official as authentic and (2) they did not show conclusively that Rumley was in fact convicted.

Of course, when the government seeks an enhanced sentence under ACCA, it bears the burden of establishing by a preponderance of the evidence that the defendant has three prior convictions for a violent felony or serious drug offense. *See United States v. Archie*, 771 F.3d 217, 223 (4th Cir. 2014). And the sentencing court is charged with weighing the evidence to determine whether the fact of conviction has been established. *See id.* at 224. We review that determination for clear error. *Id.*

At the 2019 resentencing hearing, the government introduced three documents as evidence to prove Rumley's 1979 conviction: (1) a notice dated February 13, 1979, stating that Rumley was indicted for unlawful wounding and scheduling trial for February 22, 1979; (2) a plea agreement dated February 22, 1979, and signed by Rumley, his counsel, and the attorney for the Commonwealth of Virginia, in which Rumley agreed to plead guilty to unlawful wounding in exchange for a sentence of three years, with two years

12

suspended; and (3) an unsigned judgment dated February 22, 1979, stating that Rumley was tried as an adult and had pleaded guilty to assault "as charged in the indictment." In addition, the probation officer testified at the sentencing hearing that these documents were official court records from the Powhatan County Circuit Court, where Rumley was convicted, and that they were maintained in the probation office's files. Based on the government's evidence, the district court found as fact that the documents were "the official records of the circuit court," kept "in the state court's books as records of conviction," and it therefore overruled Rumley's objection to the sufficiency of the evidence.

Challenging the court's finding, Rumley argues that the absence of a certification by a court official undermines the authenticity of the documents. But this argument presumes that certification is the only method by which documents can be authenticated in a sentencing proceeding. Under the Sentencing Guidelines, however, a sentencing court may consider any relevant information to resolve a factual dispute, provided that it "has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). And even the more stringent Federal Rules of Evidence provide that authentication is established when the proponent produces "*evidence* sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a) (emphasis added). Rule 901(b) gives examples of the *evidence* that would be sufficient, including the "[t]estimony that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1), or evidence that "a document was recorded or filed in a public office as authorized by law; or . . . a purported public record or statement is from the office where items of this kind are kept," Fed. R.

13

Evid. 901(b)(7). In this case, a probation officer testified that the documents were obtained from the Powhatan County Circuit Court, where Rumley was convicted, and kept in the probation office's files. This testimony was, we conclude, sufficient to justify the district court's factual finding that the documents were the official records of the circuit court. Indeed, at the resentencing hearing itself, Rumley conceded that he had "no reason to doubt that [the documents were] authentic."

Rumley also argues that because the document identified as the "judgment" in the 1979 case was not signed, it failed to show that he was in fact convicted. While that might otherwise be an available argument, the government's exhibit purporting to be the "judgment" was not the only document submitted by the government or relied on by the district court. The information in the signed plea agreement, which was consistent with the unsigned judgment in every respect, supports a reasonable inference that the lack of a signature on the judgment was merely a technical error in recordkeeping. *See Archie*, 771 F.3d at 225 ("When called upon to determine the existence of a prior conviction for sentencing purposes, a district court can engage in permitted fact-finding in a routine and conscientious sense even if inconsistences and clerical mistakes exist in state records") (cleaned up). We conclude that the district court did not clearly err in finding that, taken together, the documents demonstrated that Rumley was in fact convicted of unlawful wounding in 1979.

14

IV

Finally, Rumley contends that, in any event, his 1979 conviction does not qualify as an ACCA predicate under 18 U.S.C. § 924(e)(1) because the Virginia unlawful wounding offense is not a "violent felony," as defined in § 924(e)(2)(B)(i). More particularly, he argues that the minimum conduct necessary to commit unlawful wounding does not involve "the use, attempted use, or threatened use of physical force against the person of another." In his view, Virginia's unlawful wounding statute — which provides that "[i]f any person . . . by any means cause [another person] bodily injury with the intent to maim, disfigure, disable, or kill," he shall be guilty of a felony, Va. Code Ann. § 18.2-51 — does not satisfy the definition of a violent felony because unlawful wounding can be committed by use of de minimis force or "omissions, such as the withholding of food, water, or medicine from a dependent child (or someone else as to whom one has a duty of care)." And according to Rumley, because an omission "require[s] no 'force' whatsoever," the crime of unlawful wounding fails to qualify as a violent felony.

To address Rumley's argument requires first an understanding of how federal law defines "violent felony" for purposes of 18 U.S.C. § 924(e); second, an understanding of the elements that constitute a violation of Virginia's unlawful wounding statute; and third, a determination of whether there is a realistic probability — not merely a theoretical possibility — that the minimum conduct necessary for conviction under the Virginia law involves the use of physical force as defined by federal law. *See United States v. Doctor*, 842 F.3d 306, 308–09 (4th Cir. 2016) (describing the categorical approach to determine whether an offense constitutes a violent felony).

15

Under federal law, "violent felony" is defined for purposes of ACCA to be a crime punishable by imprisonment for more than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). And the term "physical force" means "*violent* force — that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010); *see also Stokeling v. United States*, 139 S. Ct. 544, 553 (2019); *United States v. Allred*, 942 F.3d 641, 652 (4th Cir. 2019). And a mere "offensive touching" that is sufficient to sustain a battery at common law does not amount to "force capable of causing physical pain or injury." *Curtis Johnson*, 559 U.S. at 140. On the other hand, the force used in a common law robbery to overcome a victim's resistance, "however slight," "is inherently 'violent' in the sense contemplated by [*Curtis*] *Johnson* and suggests a degree of power that would not be satisfied by the merest touching." *Stokeling*, 139 S. Ct. at 550, 553 (cleaned up).

It is also clear that "the use of physical force" includes force applied directly *or indirectly*. *See United States v. Castleman*, 572 U.S. 157, 170–71 (2014) (construing "use of physical force" in § 921(a)(33)(A)(ii)); *see also United States v. Reid*, 861 F.3d 523, 529 (4th Cir. 2017) (concluding that "ACCA's phrase 'use of physical force' includes force applied directly or indirectly"). In *Castleman*, the Court rejected the argument that the Tennessee domestic violence offense under consideration there could be committed without the use of physical force because the requisite bodily injury could be caused by, for example, "'deceiving the victim into drinking a poisoned beverage, without making contact of any kind.'" 572 U.S. at 170 (cleaned up). The Court explained:

16

> The "use of force" in Castleman's example is not the act of "sprinkling" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or a punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id.* at 171 (cleaned up).

But not every act that causes bodily injury amounts to the use of physical force as required by § 924(e)(2)(B)(i). Bodily injury can result from negligent or even accidental acts, and those acts, even if criminal, would not constitute violent felonies. Thus, the Supreme Court has also made clear that the phrase "use of physical force" in statutes like ACCA requires "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *see also Allred*, 942 F.3d at 652 ("[A]n offense will not have as an element the 'use' of force sufficient to qualify as a violent felony if it does not have the requisite level of mens rea"). In contrast, "the knowing or intentional causation of bodily injury *necessarily* involves the use of physical force." *Castleman*, 572 U.S. at 169 (emphasis added); *see also United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) (recognizing that "the logic of *Castleman* extends to our review of ACCA's force clause").

With this understanding of ACCA's requirement that a predicate offense involve the use of physical force against a person to qualify as a violent felony, we turn to the elements of Virginia's unlawful wounding statute to determine whether the minimum conduct necessary to violate that law involves the use of physical force, as that phrase is used in § 924(e)(2)(B)(i).

17

The Virginia statute provides:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Va. Code Ann. § 18.2-51. Thus, the minimum conduct necessary for conviction under § 18.2-51 is "caus[ing] [a person] bodily injury" by any means and "with the intent to maim, disfigure, disable, or kill." *Id.*; *see also Johnson v. Commonwealth*, 669 S.E.2d 368, 378 (Va. Ct. App. 2008) (explaining that "[t]o be guilty [of unlawful or malicious wounding] under Code § 18.2-51, a person must intend to permanently, not merely temporarily, harm another person"). In other words, not only does the Virginia statute require the causation of bodily injury, but it also requires that the person causing the injury have acted with the specific intent to cause severe and permanent injury — maiming, disfigurement, permanent disability, or death. Such a crime categorically involves "the use of physical force" within the meaning of ACCA. *See Castleman*, 572 U.S. at 169; *Allred*, 942 F.3d at 653–54; *Battle*, 927 F.3d at 167 ("Following *Castleman*, it is impossible to intend to cause injury or death without physical force as contemplated under the ACCA").

Indeed, we have already concluded that a very similar offense — a violation of Virginia Code § 18.2-55 — categorically involves the "use of force" so as to qualify as a violent felony under ACCA. *See Reid*, 861 F.3d at 525. For conviction, § 18.2-55 requires that an inmate in a detention facility "knowingly and willfully inflict bodily injury on" a nonprisoner person lawfully in the detention facility. The relevant elements of § 18.2-55 thus mirror those of § 18.2-51, which likewise requires intentional causation of bodily

18

injury for conviction. And in *Reid*, we held that "§ 18.2-55's element of 'knowingly and willfully inflict[ing] bodily injury' on another person squarely matches ACCA's force clause." 861 F.3d at 527. It is noteworthy that in *Reid*, we also rejected an argument — similar to those Rumley makes here — that because the statute could be violated by indirect means, such as "intentionally (1) pouring water on the floor, causing an officer to slip, (2) pulling a chair out from underneath an officer before he sits, (3) removing screws from a chair or stair rail, or (4) even poisoning," *id.* at 526, it was too broad to categorically require the use of physical force. We find *Reid* directly on point.

Therefore, we hold in this case that a conviction of Virginia Code § 18.2-51 is a violent felony for the purpose of applying ACCA's sentencing enhancement, as it involves "the use of physical force" required by § 924(e)(2)(B)(i). While our unpublished opinions are not to be cited as binding precedent, we nonetheless note that we have reached the same conclusion numerous times before, making clear that the intentional infliction of bodily harm requires a use of physical force, *even if* the means used are indirect. *See United States v. Mitchell*, 774 F. App'x 138, 139–40 (4th Cir. 2019) (per curiam) (recognizing that Virginia unlawful wounding qualifies as a violent felony under ACCA); *United States v. Jenkins*, 719 F. App'x 241 (4th Cir. 2018) (same); *United States v. James*, 718 F. App'x 201 (4th Cir. 2018) (recognizing that Virginia unlawful wounding is a crime of violence under § U.S.S.G. 4B1.2(a)(1)); *United States v. Candiloro*, 322 F. App'x 332 (per curiam) (4th Cir. 2009) (recognizing that Virginia unlawful wounding qualifies as a violent felony under ACCA).

Rumley argues that the reasoning of those cases is flawed, maintaining that, as a matter of logic, the Virginia unlawful wounding statute can be violated by omission without any force whatsoever and therefore that the crime does not qualify as a violent felony under ACCA. Having identified no Virginia case applying the statute where harm was caused by omission, he proffers as an imagined example the "withholding of food, water, or medicine from a dependent child." This argument, however, fails on several levels. *First*, conceiving of a violation in the "legal imagination" is not an appropriate method by which to determine the minimum conduct necessary to violate a statute. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). "There must be a realistic probability, not a theoretical possibility" that the described conduct would be prosecuted under the statute. *United States v. Drummond*, 925 F.3d 681, 689–91 (4th Cir. 2019). And Rumley has not made this showing.

*Second*, Rumley's hypothetical describing unlawful omission fails to include the mens rea required for a violation of § 18.2-51 — that the offender have specific intent to "maim, disfigure, disable, or kill" the dependent child.

And *third*, when the mens rea is included in Rumley's hypothetical — that the person specifically intended to cause severe and permanent injury when he injured a dependent child by withholding care — the crime involves the use of physical force. *See, e.g.*, *United States v. Peeples,* 879 F.3d 282, 286–87 (8th Cir. 2018) (concluding that an offense that can be committed by the intentional withholding of food still categorically involves the use of violent force because, under *Castleman*, "[i]t does not matter that the harm occurs indirectly as a result of malnutrition"); *United States v. Waters*, 823 F.3d 1062,

20

1066 (7th Cir. 2016) (explaining that knowingly withholding medicine to cause physical harm indirectly is analogous to knowingly employing poison to do the same, and "thus qualifies as the use of force under *Castleman*"). In the case of such an omission, the force, as in all uses of force, is simply the mechanism by which the harm is imposed, and the *use* of force is the "employing [of that mechanism] knowingly as a device to cause physical harm." *Castleman*, 572 U.S. at 171; *see also id.* at 170–71 ("[T]he word 'use' conveys the idea that the thing used (here, 'physical force') has been made the user's instrument"). Thus, there is just as much a "use of force" when a murderous parent uses the body's need for food to intentionally cause his child's death as when that parent uses the forceful physical properties of poison to achieve the same result.

At bottom, we conclude that Virginia unlawful wounding involves the use of force as required by § 924(e)(2)(B)(i), and therefore that Rumley's 1979 conviction constitutes a violent felony predicate under ACCA. Because we agree with the district court that Rumley has three qualifying ACCA predicates without counting his 1982 Virginia conviction for robbery, we do not reach the government's persuasive argument that *Stokeling* abrogated this court's decision in *United States v. Winston*, 850 F.3d 677, 679 (4th Cir. 2017), holding that Virginia robbery does not qualify as a violent felony under ACCA's force clause. *Cf. United States v. Dinkins*, 928 F.3d 349, 352 (4th Cir. 2019) (recognizing that under the logic of *Stokeling*, North Carolina common law robbery satisfies ACCA's force clause).

The judgment of the district court is

AFFIRMED.

21

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

I concur in the judgment. While I agree that Virginia unlawful wounding qualifies as a violent felony under the ACCA, I write separately to express my skepticism that omissions constitute violent force — an issue we need not reach given that Rumley has not shown a realistic probability that omissions would be prosecuted under the statute. *See United States v. Drummond*, 925 F.3d 681, 689–91 (4th Cir. 2019).

The majority misapplies *United States v. Castleman*, 572 U.S. 157 (2014), which held that force may be effected indirectly — for example, by poisoning one's beverage. *See id.* at 170. The Supreme Court has never held, in *Castleman* or any other case, that *omissions* constitute indirect force.[*] The majority thus "conflate[s] an . . . omission with the use of force, something that *Castleman* . . . does not support." *United States v. Mayo*, 901 F.3d 218, 230 (3d Cir. 2018); *Harper v. United States*, 780 F. App'x 236, 245 (6th Cir. 2019) (Moore, J., concurring) (noting that *Castleman* gave "examples of indirect force, all of which involve affirmative acts rather than omissions").

---

[*] To be sure, *Castleman* defines "force" broadly, stating that "[i]t is impossible to cause bodily injury without applying force in the common-law sense." *Castleman*, 572 U.S. at 170. This expansive language has suggested to some that "force" can encompass omissions. *E.g.*, *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018). But the "force" to which *Castleman* refers is not the *violent force* required under the ACCA, but *common-law force* — the force required to commit battery. *See Castleman*, 572 U.S. at 163–64. This is crucial context for *Castleman's* capacious definition of "force," as battery encompasses a wide array of conduct, including omissions. *See* 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.2(b) (3d ed. 2019). *Violent force*, however, is narrower than common-law force, as *Castleman* itself acknowledged. *Castleman*, 572 U.S. at 163.

22